UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

THOMAS CHIC,

    Plaintiff,

v.                                                      Case No.   25-CV-991

WATERFORD UNION HIGH
SCHOOL DISTRICT,

    Defendant.

**DECISION AND ORDER ON DEFENDANT'S PARTIAL MOTION TO DISMISS**

Thomas Chic sues his former employer, Waterford Union High School District, alleging discrimination, retaliation, and failure to accommodate in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. The District moves to dismiss Chic's retaliation claim for failure to exhaust his administrative remedies. *See* Fed. R. Civ. P. 12(b)(6). For the reasons explained below, the District's partial motion to dismiss is granted.

BACKGROUND

Chic began working with the District as a part-time cleaner on August 30, 2004. (Compl. ¶ 13.) On December 21, 2007, the District hired Chic as a full-time custodian. (*Id.* ¶ 14.) In April 2011, Chic injured his back and required corrective surgery. (*Id.* ¶ 16.) During the back surgery, Chic's spinal nerve was pricked causing Chic to develop dropped foot syndrome. (*Id.* ¶ 17.) On July 9, 2021, Chic fell twice at work on a slippery floor he had stripped. (*Id.* ¶ 18.) Chic's doctor, Dr. Scott Dresden, completed and signed a Worker's Compensation Return to Work Report on July 15, 2021, that included instructions that Chic

avoid stripping floors to avoid future injury. (*Id.* ¶¶ 19–20.) Chic provided the Report to Josh Wensing, the Director of Building and Grounds. (*Id.* ¶ 21.) Floor stripping at the District is performed exclusively during the summer months and during the summers of 2021 and 2022, Chic was never directed to personally strip the floors. (*Id.* ¶¶ 22–23.) Rather, during the summers of 2021, 2022, and 2023, Chic trained the summer employees to strip the floors. (*Id.* ¶ 24.) He further observed, instructed, supervised, and ensured that safety procedures were followed by the summer employees. (*Id.* ¶ 25.)

Chic alleges that on or about July 6, 2023, supervisor Kimberly Milas directed Chic to personally strip the floors. (*Id.* ¶ 26.) Chic alleges he informed Milas that in 2021 he had submitted a doctor's note releasing him from stripping the floors himself due to his disability. (*Id.* ¶ 27.) Chic asserts that Milas stated she could not find Chic's medical release; however, Chic alleges that the District never requested Chic provide medical documentation for his requested accommodation. (*Id.* ¶ 29.) The District then required Chic to be evaluated for his ability to perform each of his job duties, rather than simply the one duty for which he alleges he requested a reasonable accommodation. (*Id.* ¶ 31.)

Chic alleges that on his Fitness for Duty form, his doctor restricted him from stripping floors and walking on slippery or uneven surfaces, as well as advised "caution" (but did not restrict) Chic from working on snow or ice and climbing ladders. (*Id.* ¶¶ 32–33.) From July 10, 2021, until his employment was terminated on August 2, 2023, Chic alleges that he had no accidents nor suffered any injuries. (*Id.* ¶¶ 34, 40.) Chic asserts that the District claimed that his doctor's comments on his Fitness for Duty form prevented him from performing a wide array of custodian duties; however, he alleges that the District failed to engage in any conversations with Chic about job duties he could or could not perform.

(*Id.* ¶¶ 35–36.) Chic alleges that the District did not explore whether Chic could perform his job duties with or without modifications or seek clarification from his doctor regarding the precise nature of the restrictions listed on the Fitness for Duty form. (*Id.* ¶¶ 38–39.) Rather, Chic alleges the District terminated his employment because of his disability and for requesting a reasonable accommodation. (*Id.* ¶¶ 43–44.)

Chic filed a discrimination complaint with the Wisconsin Department of Workforce Development ("DWD") on August 8, 2023, and on May 10, 2024, the DWD issues an Initial Determination – Probable Cause. (*Id.* ¶¶ 4–5.) On April 15, 2025, the Equal Employment Opportunity Commission ("EEOC") issued a Notice of the Right to Sue pursuant to Chic's request. (*Id.* ¶ 6.)

## LEGAL STANDARD

The District moves to dismiss Count Two of Chic's complaint under Fed. R. Civ. P. 12(b)(6) based on a failure to exhaust administrative remedies. A failure to exhaust is normally considered to be an affirmative defense and as such, a plaintiff has no obligation to allege facts negating the defense in his complaint. *Mosely v. Bd. of Educ. of City of Chicago*, 434 F.3d 527, 533 (7th Cir. 2006). Thus, the Seventh Circuit has stated that generally speaking, "the earliest possible time to consider [this affirmative defense] would normally be after the answer has been filed, if it is possible to decide the issue through a Rule 12(c) motion for judgment on the pleadings." *Id.* The court has noted, however, that "[p]arties and courts occasionally take short-cuts and present certain arguments through a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), if the allegations of the complaint in the light most favorable to the plaintiff show that there is no way that any amendment could salvage the claim." *Id.*

In this case, Chic asserts in his complaint that he filed a discrimination complaint with the Wisconsin DWD, that the EEOC issued him a Right to Sue notice, and that all conditions precedent to this action have been performed. (Compl. ¶¶ 4–7.) In other words, on the face of his complaint, Chic has satisfied the condition precedent of filing a charge with the EEOC before bringing a court action. *See Riley v. City of Kokomo*, 909 F.3d 182, 189 (7th Cir. 2018). Chic does not append the relevant documents to his complaint. Rather, it is the District, in filing its motion to dismiss, who provides copies of the relevant documents from Chic's administrative proceedings, arguing that the documents show Chic failed to raise a retaliation claim before the EEOC. (*See* Declaration of Ashley E. McNulty, Docket # 12.)

Generally, a district court cannot consider evidence outside the pleadings to decide a motion to dismiss without converting it into a motion for summary judgment, *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018); however, there is an exception for documents attached to a motion to dismiss that are referred to in the plaintiff's complaint and are central to his claim, *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). Such documents may be considered by a district court in ruling on the motion to dismiss without converting the motion to one for summary judgment. *Id*. The Seventh Circuit has stated that "were it not for the exception, the plaintiff could evade dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proved that his claim had no merit." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

Because Chic refers to his discrimination charges before the Wisconsin DWD and EEOC in his complaint and they are central to whether he can bring his ADA claims in

4

Case 2:25-cv-00991-NJ    Filed 09/23/25    Page 4 of 10    Document 15

federal court, I find it proper to consider these documents, as well as the District's exhaustion defense, under Rule 12(b)(6).

## ANALYSIS

Chic alleges three causes of action against the District in his complaint. Count One alleges a failure to accommodate under the ADA; Count Two alleges retaliatory discharge under the ADA; and Count Three alleges discriminatory discharge under the ADA. The District moves to dismiss only Count Two of Chic's complaint based on failure to exhaust administrative remedies. Thus, I will address only Chic's retaliation claim.

1. *Failure to Exhaust Administrative Remedies*

An ADA plaintiff "must file a charge with the EEOC before bringing a court action against an employer." *Riley*, 909 F.3d at 189. This is a condition precedent, *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994); "a plaintiff is barred from raising a claim in the district court that had not been raised in his or her EEOC charge unless the claim is reasonably related to one of the EEOC charges and can be expected to develop from an investigation into the charges actually raised," *Green v. Nat'l Steel Corp.*, 197 F.3d 894, 898 (7th Cir. 1999).

Chic filed a discrimination complaint in the Equal Rights Division ("ERD") of Wisconsin's DWD. (McNulty Decl. ¶ 2, Ex. 1, Docket # 12-1.) Although Chic did not file a Charge of Discrimination with the EEOC, as he acknowledges, complaints filed in the ERD are automatically cross-filed with the EEOC. (Docket # 13 at 3.) Chic does not dispute that he did not specifically assert retaliatory discharge in his ERD complaint. (*Id.* at 6.) He explains, however, that this was not because he did not intend to assert the claim, but because he was uncertain whether such a claim for retaliatory discharged even exists under

the Wisconsin Fair Employment Act ("WFEA"), Wis. Stat. §§ 111.31–111.395. (*Id.*) Unlike federal law, which has consistently affirmed that seeking a reasonable accommodation for a disability is a statutorily protected activity under the ADA, Chic argues that Wisconsin law is not similarly clear. (*Id.*)

The WFEA provides that "it is an act of employment discrimination" to "discharge or otherwise discriminate against any individual because he or she has opposed any discriminatory practice under this subchapter or because he or she has made a complaint, testified or assisted in any proceeding under this subchapter." Wis. Stat. § 111.322(3). Chic, citing to case law of the Labor & Industry Review Commission ("LIRC"), argues that § 111.322(3) recognizes only two different kinds of protected activity—"opposition" and "participation," respectively. (Docket # 13 at 5.) Chic asserts that he could not allege retaliation based on "participation" because he did not file a complaint with the ERD until after his termination, nor did he testify or assist with any other discrimination complaints before the ERD. (*Id.* at 4.) Chic argues that "opposition" covers actions taken by an employee to protest discrimination, short of filing a formal complaint with the ERD. (*Id.* at 5.) He argues that because he did not express any objection to discrimination in the workplace until after his termination, this form of retaliation was inapplicable as well. (*Id.* at 4.)

Simply because Wisconsin law is less clear as to whether requesting a reasonable accommodation is a "protected activity" under the WFEA than is federal law, I disagree this exempted Chic from raising the issue before the ERD. In order to establish a retaliation claim under the WFEA, the employee must first make a *prima facie* showing that he engaged in a protected activity, that he was subject to an adverse employment decision, and that

6

Case 2:25-cv-00991-NJ    Filed 09/23/25    Page 6 of 10    Document 15

there was a connection between the two. *Town of Rome Police Dep't v. Lab. & Indus. Rev. Comm'n*, 2011 WI App 143, ¶ 10, 337 Wis. 2d 557, 806 N.W.2d 268. Even if Wisconsin courts have not explicitly included the request for a reasonable accommodation within the definition of a "protected activity," it does not follow that the WFEA prohibits such a cause of action.

The language of Wis. Stat. § 111.322(3) does not meaningfully differ from the retaliation provision of the ADA, found at 42 U.S.C. § 12203(a). Both statutes proscribe discriminating against an individual based on "opposition" and "participation." Specifically, as to "opposition," the WFEA prohibits discrimination because one "opposed any discriminatory practice under this subchapter," while the ADA prohibits discrimination because an individual "has opposed any act or practice made unlawful by this chapter." The Seventh Circuit has found that because failing to make a reasonable accommodation constitutes discrimination under the ADA, and because the ADA prohibits retaliation against individuals who engage in activities protected by the ADA, it follows that "requesting reasonable accommodations" is an activity protected by the ADA. *See Rowlands v. United Parcel Serv. - Fort Wayne*, 901 F.3d 792, 798 (7th Cir. 2018).

The Seventh Circuit's logic applies with equal force here. Like the ADA, the WFEA similarly states that refusing to reasonably accommodate an employee's disability constitutes employment discrimination. Wis. Stat. § 111.34(1)(b). Thus, it similarly follows that the WFEA's prohibition of retaliation for "opposing any discriminatory practice under the subchapter" would include requesting a reasonable accommodation. *See Wingra Redi-Mix Inc. v. Lab. & Indus. Rev. Comm'n*, 2023 WI App 34, ¶ 42, n.6, 408 Wis. 2d 563, 993

7

Case 2:25-cv-00991-NJ     Filed 09/23/25     Page 7 of 10     Document 15

N.W.2d 715 (noting that Wisconsin courts may consider federal precedent when interpreting the WFEA).

Furthermore, Chic was represented by counsel before the ERD. (*See* Docket # 12-2 at 6, copying counsel.) Even if Wisconsin law was unclear as to the availability of this cause of action, given the clarity in federal law, counsel could have amended his administrative complaint to raise this claim before the EEOC.

Chic further argues that despite his failure to raise his retaliatory discharge claim before the ERD and EEOC, he should not be barred from raising the claim here because the claim is reasonably related and could be expected to develop from an investigation into the charges he did raise—failure to accommodate a disability and termination because of disability. Claims are not "alike" or "reasonably related" unless "there is a factual relationship between them. This means that the EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*." *Cheek*, 31 F.3d at 501 (emphasis in original).

While Chic's disability provides the backdrop for all three causes of action raised in his complaint, Chic's allegation that the District retaliated against him because he engaged in the protected activity of requesting a reasonable accommodation does not describe the same conduct as his allegation that the District terminated him because of his disability. In his ERD complaint, Chic states that he provided notification from his physician in July 2021 that he could not perform floor stripping due to his back injury. (Docket # 12-1 at 4.) He specifically states that at "no point between July 2021 and July 2023" did Chic request any additional accommodation and that the District required him to schedule a doctor's visit "even though Mr. Chic did not ask for any further accommodation." (*Id.*) Rather, he

asserts that the District failed to provide a reasonable accommodation and ultimately discriminated against him on the basis of his disability. (*Id.* at 5.) Thus, given Chic's assertion before the ERD that he did not seek any additional accommodations after July 2021, it is unclear how the ERD would have notice that he was alleging he was terminated because he requested an accommodation. While the Seventh Circuit has noted that "most EEOC charges are completed by laypersons rather than by lawyers" so a plaintiff "need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint," *Cheek*, 31 F.3d at 500, Chic was not unrepresented during his administrative process. Thus, Chic could have alleged that he was terminated for engaging in a protected activity in addition to alleging termination due to his disability. He did not do so. For these reasons, I find that Chic has failed to exhaust his administrative remedies as to his retaliatory discharge claim under the ADA.

2. *Dismissal of Claim With or Without Prejudice*

The District argues that Chic's retaliation claim must be dismissed with prejudice because Chic is now time-barred from asserting it. (Docket # 11 at 5.) Generally speaking, the proper remedy for a failure to exhaust administrative remedies is to dismiss the suit without prejudice, thereby leaving the plaintiff free to refile his suit when and if he exhausts all of his administrative remedies or drops the unexhausted claims. *Greene v. Meese*, 875 F.2d 639, 643 (7th Cir. 1989). In this case, however, the District argues that because Chic has not been employed with the District since 2023, he cannot possibly timely assert a retaliation claim against the District.

I agree. In Wisconsin, a plaintiff has 300 days from the alleged discriminatory act to file a complaint with the EEOC or the state Equal Rights Division. *Calvin v. Sub-Zero Freezer,*

9

*Co.*, 697 F. App'x 874, 875 (7th Cir. 2017). "A plaintiff's failure to file a timely administrative complaint bars his suit." *Id.* Chic asserted in his ERD complaint that the most recent date of discrimination was August 2, 2023, the day he was terminated. (Docket # 12-1 at 2.) Thus, over two years have passed since the last discriminatory act. Any attempt to exhaust this claim is now time-barred. As such, dismissal with prejudice is proper in this case.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Defendant's Partial Motion to Dismiss (Docket # 10) is **GRANTED**. Count Two of Plaintiff's Complaint is dismissed with prejudice.

Dated at Milwaukee, Wisconsin this 23rd day of September, 2025.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge